UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:12-cv-125-KSF

EVA MARIA VASQUEZ                                                                            PLAINTIFF

v.                                            **OPINION & ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                                                DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Plaintiff, Eva Maria Vasquez, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI"). The Court, having reviewed the record, will remand this matter to the Commissioner for further proceedings

**I.      OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge must follow.  20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997).  The five steps, in summary, are as follows:

(1)     If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2)     If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3)     If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

> (4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.
>
> (5) Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc), she is not disabled.

*Id.* The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. § 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Plaintiff filed her applications for benefits on January 29, 2009, alleging that she became unable to work on March 1, 2003 [TR 332-38, 366]. Plaintiff's applications were denied initially and again on reconsideration [TR 255-58, 262-64]. After a hearing before an Administrative Law Judge ("ALJ") on November 30, 2010 [TR 211-239], the ALJ issued an unfavorable decision on December 15, 2010 [TR 192-210]. Plaintiff's request for review to the Appeals Council was denied on May 15, 2012, and this decision of the ALJ now stands as the final decision of the Commissioner [TR 1-4].

At the time the ALJ rendered his decision, Plaintiff was 41 years old [TR 332]. Plaintiff completed the ninth grade and is able to communicate in English [TR 203, 377]. Plaintiff has no past relevant work experience [TR 203]. Plaintiff claims that her ability to work is limited due to

neck, back, shoulder and hip problems, bad nerves, hepatitis C and asthma [TR 371]. In addition, at the hearing, Plaintiff also claimed suffering from headaches, seizures and mental health issues [TR 216-217, 223-227]. In her application for benefits, Plaintiff alleges that she became disabled and became unable to work because of her illnesses, injuries, or conditions on March 3, 2003 [TR 371]. However, at the hearing Plaintiff sought to amend the onset date to April 9, 2008 [TR 214].

At step one of his analysis, the ALJ found that Plaintiff has not engaged in any substantial gainful activity since January 29, 2010, the application date [TR 197]. At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: history of seizure disorder; asthma; degenerative disc disease of the cervical spine and lumbar spine; hepatitis C; depression; pain disorder; and polysubstance abuse in early remission [TR 197]. Continuing on to the third step, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments [TR 197].

Reviewing the entire administrative record and considering Plaintiff's testimony, the ALJ described Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b), except that she is limited to simple, unskilled, and routine tasks; must have an option to sit or stand every 30-45 minutes; can no more than occasionally climb ramps/stairs; can never climb ladders/ropes/scaffolds; can no more than occasionally crouch, crawl, and kneel; can no more than occasionally reach overhead; can never have exposure to vibration, dusts, fumes, gas, and odors; and can never have exposure to dangerous machinery and unprotected heights. Additionally, the claimant can have only occasional, casual, non-confrontational contact with co-workers and supervisors; and can never have contact with the general public.

[TR 199].

At step four of the analysis, the ALJ found that Plaintiff had no past relevant work [TR 203].

At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, as well as the testimony of the Vocational Expert (the "VE") and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform [TR 203-204]. Therefore, the ALJ determined that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 28, 2009, the date Plaintiff's application was filed, through the date of the ALJ's decision. [TR 204].

The ALJ's decision that Plaintiff is not disabled became the final decision of the Commissioner when the Appeals Commission subsequently denied her request for review on May 15, 2012 [TR 1-4]. Plaintiff has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## I.     GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court

might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## II. ANALYSIS

Plaintiff presents three issues on appeal: 1) that the ALJ failed to properly evaluate her subjective complaints regarding her back pain; 2) that the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence; and 3) the hypothetical question presented to the VE improperly omitted essential evidence regarding Plaintiff's limitations. Each of these arguments will be addressed in turn.

### A. The ALJ's Findings Regarding Plaintiff's Back Pain are Supported by Substantial Evidence

Plaintiff argues that the ALJ erred by failing to properly evaluate her subjective complaints regarding her back pain. Plaintiff points to her own testimony regarding the extent of her back and hip pain and further points to certain medical records as objective evidence of an underlying condition that could reasonably be expected to produce her alleged disabling pain. Thus, she argues that the ALJ's conclusion that she is not disabled is not supported by the evidence.

A plaintiff's subjective statements of pain or other symptoms, taken alone, cannot support a finding of disability. 20 C.F.R. § 404.1529 (a)-(e). *See also Tyra v. Secretary of Health and Human Services*, 896 F.2d 1024, 1030 (6th Cir. 1990). The Sixth Circuit Court of Appeals has developed a two-prong test to evaluate a claimant's assertions of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can

reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531(citations omitted).

In addition, "in evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." *Id*. (citing *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). Although an ALJ's assessment of a claimant's credibility must be supported by substantial evidence, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531 (citations omitted).

In support of her argument, Plaintiff points to her own testimony that her back pain has become more severe since a car accident in January 2009 [TR 221]. She testified that she is in constant, severe pain in her back and that her back pain radiates down into her hip area [TR 222-224]. She further testified that her hip pain is aggravated by standing and that she must lay down for thirty minutes approximately six or seven times a day in order to gain relief from the pain [TR 233]. She also claimed to suffer from pain in her left shoulder and neck [TR 233]. She also testified that she can lift or carry up to five pounds; that she can only sit for 15-20 minutes at a time; that she can only stand up to 20-25 minutes at a time; she is unable to reach above her head because it pulls in her back; her pain would prevent her from being able to pick up a pencil if she dropped it under her desk; and that she has difficulty riding long distances in an automobile due to the difficulty she has with prolonged sitting [TR 230-234].

Plaintiff cites to the following medical records as objective medical evidence of an underlying condition that could produce the above symptoms: (1) a record noting that an April 11,

2006 MRI of her spine showed degenerative disk disease at L4-L5 and at L5-S1 and the presence of a small disk herniation at C5-C6 [TR 1658]; (2) a record of a January 8, 2009 x-ray of the complete lumbar spine series showing a mild degree of lumbar spondylosis with a mild narrowing of the L5-S1 disk interspace, which is indicative of degenerative disk disease [TR 1459]; and (3) a record of a February 26, 2010 cervical spine x-ray showing mild degenerative spurring off of C5, moderated disk narrowing at C5-6, and a slight disk narrowing at C4-5 [no citation given].

However, in this case, there is no dispute that Plaintiff has degenerative disk disease. Indeed, the ALJ specifically identified degenerative disc disease of the cervical spine and lumbar spine, as well as pain disorder, as severe impairments resulting in functional limitations or restrictions that have more than a minimal effect on Plaintiff's ability to perform basic work activities [TR 197]. Rather, the relevant inquiry is the extent of her pain and, accordingly, any limitations resulting from this impairment. Although the records cited by Plaintiff confirm that she has degenerative disk disease, none of the records relied upon by Plaintiff provide objective medical evidence confirming the severity of the pain that she alleges. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition); *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988)(a claimant diagnosed with dysthymic disorder must nevertheless establish that the condition was disabling).

To be sure, the ALJ recognized that Plaintiff's degenerative disk disease does cause her pain and, as a result, reasonably incorporated limitations resulting from this pain into Plaintiff's RFC. Specifically, the ALJ found that Plaintiff should be limited to the following: simple, unskilled, and routine tasks; must have an option to sit or stand every 30-45 minutes; can no more than occasionally climb ramps/stairs; can never climb ladders/ropes/scaffolds; can no more than occasionally crouch,

crawl, and kneel; can no more than occasionally reach overhead; can never have exposure to vibration, dusts, fumes, gas, and odors; and can never have exposure to dangerous machinery and unprotected heights [TR 199]. The ALJ considered Plaintiff's testimony regarding her alleged symptoms and found that her statements concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent that they are inconsistent with the RFC assessment [TR 201].

In determining that Plaintiff's subjective allegations of disabling back and hip pain are not credible, the ALJ reasonably compared Plaintiff's statements concerning the intensity, persistence and limiting effects of her pain with objective medical evidence in the record, as well as evidence of Plaintiff's landscaping work in prison. The ALJ's findings in this regard are supported by substantial evidence. For example, with respect to Plaintiff's alleged pain disorder, physicians at the Clover Fork Clinic found that Plaintiff did not seem to be in much pain and told her that they were not willing to discuss changes in her pain medications [TR 201, 1613]. In addition, with respect to Plaintiff's alleged degenerative disc disease of the cervical spine and lumbar spine, as noted by the ALJ, almost all clinical and diagnostic tests only showed mild findings [TR 202]. Specifically, the x-ray of the lumbar spine and computed tomography of the cervical spine taken on January 8, 2009 - the same x-ray identified by Plaintiff - revealed only a mild degree of lumbar spondylosis and a mild narrowing of L5-S1 disk interspace, while the rest of the disk interspaces were well-maintained, pedicles were intact, no fractures were identified, and the cervical spine was assessed as normal [TR 202, 1455, 1459]. X-rays taken of the spine on February 16, 2010 revealed only mild degenerative arthritic spurring and slight disk narrowing at L3-L4, L5-S1, and C4-C5; moderate disk narrowing at C5-C6; and mild degenerative spurring off of C5 [TR 202, 1683, 1686]. However, there were no

fractures, and the lumbar vertebra were normally aligned [*Id.*]. With respect to Plaintiff's complaints of hip pain, x-rays of the pelvis and hips taken on January 8, 2009 and February 16, 2010 revealed no focal bony abnormality or fractures [TR 202, 1464, 1687].

In addition, as noted by the ALJ, upon a physical examination on January 23, 2009, after a motor vehicle accident at the beginning of the month, Plaintiff's neck was supple with no adenopathy [TR 202, 1610]. Although Plaintiff had a mild muscle-type pain in her upper back and demonstrative tenderness in her lumbar area, the physician noted that the soreness was normal and that Plaintiff would gradually improve [TR 202, 1610]. On March 11, 2009, tenderness was absent and, despite some pain, Plaintiff's range of motion was "pretty good" [TR 202, 1607]. At a consultative examination on April 22, 2009, the claimant had no tenderness in the cervical spine or lumbar spine, straight leg testing was negative and the range of motion of the spine was normal [TR 202, 1549-1550]. Plaintiff was also able to squat to 75 percent, to perform tandem gait walk and walk on heels and toes [TR 202, 1550]. In addition, at an October 26, 2010 physical exam, Plaintiff's back had no tenderness and she was in no distress [TR 202, 1729]. There is also evidence that, while Plaintiff was in prison in April 2010 (after her alleged onset date), she worked doing landscaping and her only complaint noted in the record was that her thighs were rubbing together and becoming raw due to weight gain [TR 202, 1660].

As noted above, an ALJ may "consider the credibility of a claimant when making a determination of disability." *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 542 (6th Cir., Sept. 24, 2007)(quoting *Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003)). In addition, an ALJ is justified in considering Plaintiff's "ability to conduct daily life activities in the face of his claim of disabling pain." *Warner v. Commissioner of Social Security*, 375

F.3d 387, 392 (6th Cir. 2004). *See also* 20 C.F.R. § 404.11529(c)(3); SSR 96-7p, 1996 WL 374186 at *3; *Cruse*, 502 F.3d at 542 ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating the claimant's assertion of pain or ailments.")(quoting *Walters*, 127 F.3d at 532). It is within the province of the ALJ to resolve conflicts in the evidence and decide questions of credibility. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). Here, substantial evidence supports the ALJ's findings regarding the degree of limitation resulting from Plaintiff's back pain, including the ALJ's assessment of Plaintiff's credibility made as a part of these findings. Moreover, this evidence is not contradicted by any objective evidence contained in the medical records relied upon by Plaintiff. Thus, Plaintiff has failed to dispute the ALJ's reasons for rejecting her testimony. Inasmuch as Plaintiff has failed to explain how the ALJ's credibility finding was not supported by substantial evidence, the Court will not disturb the ALJ's credibility finding. For all of these reasons, Plaintiff's argument that the ALJ erred in failing to properly evaluate Plaintiff's subjective complaints regarding her back pain fails.

      B.      Plaintiff's "Substantial Evidence" Argument

Plaintiff generally argues that the ALJ's determination that she is not disabled is not supported by substantial evidence. In support of her argument, Plaintiff vaguely offers only that, under the applicable standards of review, there is not substantial evidence to support the denial of her application for social security benefits. Rather, according to Plaintiff, "[t]he objective medical evidence unequivocally documents that the Plaintiff has several severe conditions which are disabling" [DE #13-1, p. 12]. Plaintiff makes no effort to identify the specific severe conditions to which she is referring, much less the "unequivocal" objective medical evidence documenting her conditions. Nor does she offer any explanation of how her alleged impairments interfere with her

ability to function.

Notably, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to...put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)(quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)). In *Hollon ex rel. Hollan v. Commissioner of Social Security*, 447 F.3d 477, 490-491 (6th Cir.2006), a claimant similarly contended that the Commissioner's decision to discontinue her benefits was not supported by substantial evidence, yet made little effort to develop this argument in her brief or to identify any specific aspects of the Commissioner's determination that lacked support in the record. In these circumstances, the Sixth Circuit noted that it

> decline[d] to formulate arguments on [a claimant's] behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (I) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence. Rather, we limit our consideration to the particular points that [a claimant] appears to raise in [his/her] brief on appeal.

*Id*. at 491. In *Hollan*, the court also refused to consider the claimant's generalized arguments regarding the physician's opinions of record:

> [Claimant] has failed to cite any specific opinion that the ALJ purportedly disregarded or discounted, much less suggest how such an opinion might be impermissibly inconsistent with the ALJ's findings. In the absence of any such focused challenge, we decline to broadly scrutinize any and all treating physician opinions in the record to ensure that they are properly accounted for in the ALJ's decision.

*Id. See also United States v. Phibbs*, 999 F.2d 1053, 1080 n. 12 (6th Cir.1993)(noting that "it is not our function to craft an appellant's arguments").

11

Consistent with these holdings, the Court's Standing Order entered in this case [DE #13] clearly instructs that any motion for summary judgment shall include a statement of the legal arguments presented at the beginning of the motion setting forth the plaintiff's arguments in a numbered list. The parties are further warned that the Court will consider only the arguments listed, will not formulate arguments on the parties' behalf and that the failure to submit such a statement may constitute grounds for denial of the motion. Thus, with the exception of the discussion below of the hypothetical question presented to the VE, to the extent that Plaintiff's motion suggests other, unidentified errors made by the ALJ in reaching his decision, these arguments are deemed waived by Plaintiff's failure to comply with the requirements of the Standing Order and, further, by her failure to properly develop these arguments in any meaningful way.

  C. <u>The Hypothetical Question Presented to the VE</u>

Plaintiff also argues on appeal that the hypothetical question presented by the ALJ to the VE improperly omitted essential evidence regarding Plaintiff's limitations. Thus, according to Plaintiff, the ALJ's finding at step five that work exists in the national economy that accommodates Plaintiff's RFC and vocational factors is not supported by substantial evidence.

At the hearing, the ALJ posed the following hypothetical to the VE:

> I'd like you to assume a hypothetical individual of the same age, education, and work history as the claimant. This individual would be capable of simple, unskilled, routine light exertional tasks with an option to sit or stand every 30 or 45 minutes, no more than occasional climbing of ramps and stairs, occasional stooping, crouching, kneeling, crawling, and without any climbing of ladders, ropes or scaffolds. This individual would also be limited to no more than occasional overhead reaching. This individual would also be limited to no more than - to no exposure to vibration, dust, fumes, gases or odors. Also, no exposure to dangerous machinery or unprotected heights and no more than occasional, casual, non confrontational contact with co-workers and supervisors and no contact with the general public.

[TR 237]. Based on this hypothetical, the VE testified that jobs would be available for such an individual as a hand packer (1,500 in Kentucky; 100,000 in the United States); a production laborer (3,500 in Kentucky; 150,000 in the United States); and as a production assembler (1,200 in Kentucky and 235,000 in the United States) [TR 237-238].

However, Plaintiff argues that this hypothetical was incomplete. Specifically, she argues that the hypothetical should have included moderate mental limitations identified by State agency, non-examining consultants, Laura Cutler, Ph.D., and Ilze Sillers, Ph.D. Both of these consultants completed Mental Residual Functional Capacity Assessment (MRFC) forms containing their opinions regarding Plaintiff's functional capacity [TR 1528-30, 1562-64]. In Section I of these forms, both consultants noted that Plaintiff was moderately limited in her ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods [TR 1529, 1563]. In addition, in Section III of the form, Dr. Cutler observed that, with respect to her assessment of Plaintiff's functional capacity, Plaintiff is able to sustain attention for extended periods of two hour segments for simple tasks [TR 1530].[1] Plaintiff argues that the hypothetical question posed by the ALJ to the VE did not include these limitations and, specifically, should have included some provision for quota-based jobs, as Plaintiff would not be able to perform a job requiring a certain amount of work to be done within a certain amount of time. Plaintiff also contends that the hypothetical should have made some provision for reduction in ability to concentrate, as well as a provision for missed work due to interruptions from psychologically based symptoms.

---

[1] In Section III of the form completed by Dr. Sillers, Dr. Sillers affirmed the previous findings made by Dr. Cutler and indicated that no new medical findings or claimant-alleged mental limitations were found [TR 1564].

"In order for a [VE's] testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusions that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010)(citations omitted). In *Ealy*, a state agency psychological consultant limited the claimant's ability to sustain attention to complete simple repetitive tasks to "[two-hour] segments over an eight-hour day where speed was not critical." *Id*. The Court noted that this description of the claimant's abilities spoke to some of the restrictions in pace, speed and concentration that both the consultant and the ALJ found the claimant to have. *Id*. Given this limitation, the Court found that the hypothetical posed by the ALJ to the VE "should have included the restriction that [the claimant] could work two-hour work segments during an eight-hour work day, and that speed of his performance could not be critical to his job." *Id*. According to the Court, notwithstanding a restriction to "simple, repetitive tasks," the hypothetical used by the ALJ did not fully convey the claimant's limitations to the VE because it failed to include time and speed restrictions. *Id*. at 516-517. Thus, the Court found that ALJ's determination that the claimant was able to perform a substantial number of jobs was not supported by substantial evidence and it reversed and remanded the case back to the Commissioner. *Id*. at 517.

Here, the Commissioner first notes that, although the ALJ must consider the findings of State-agency, non-examining consultants as expert evidence, he is not bound by their findings. However, the ALJ specifically found that Dr. Cutler and Dr. Sillers' opinions are supported by and consistent with the clinical and diagnostic evidence of record and, accordingly, gave them significant weight [TR 203]. Next, the Commissioner distinguishes between the "summary conclusions" notations contained in Section I of the MRFC form and the Plaintiff's RFC assessment in Section

14

III of the Form. The Commissioner notes that the Program Operations Manual System ("POMS") explains that Section I is "merely a worksheet" and "does not constitute the RFC assessment." [DE #14 at p. 6, citing POMS DI 24510.060(B)(2), 2001 WL 1933367]. Thus, the Commissioner argues that Plaintiff's argument that the "moderately limited" notations in Section I of the form should have been included in the ALJ's RFC finding or the hypothetical question posed to the VE is incorrect.

The Sixth Circuit also considered a similar argument in *Ealy* and found that the issue need not be resolved, as the ALJ's hypothetical question in that case failed to provide the VE with a fair summary of the psychological consultant's conclusions contained in Section III. *Ealy*, 594 F.3d at 516. Similarly, the Court does not need to render an opinion on this issue in this case, because the ALJ's hypothetical question did not provide the VE with a fair summary of Dr. Cutler's conclusions contained in Section III of the form. Specifically, while the ALJ's hypothetical question did account for the other restrictions identified by Dr. Cutler in Section III of the form,[2] it makes no mention of the limitation of Plaintiff's ability to sustain attention for simple tasks to two-hour segments [TR 237, 1530]. As a result, the hypothetical inadequately described Plaintiff's mental limitations. Thus, the VE's conclusion that Plaintiff could work as a hand packer, a production laborer, or as a production assembler does not serve as substantial evidence that Plaintiff could perform this work. *Ealy*, 594 F.3d at 517. Accordingly, the ALJ's conclusion that Plaintiff could perform this work was not based on substantial evidence and this case will be remanded to the Commissioner for further consideration in accordance with this Opinion & Order.

---

[2]Specifically, the Court finds that the ALJ's hypothetical adequately addressed Dr. Cutler's findings in Section III that Plaintiff is able to understand, remember, and carry out simple one and two step instructions; tolerate casual, infrequent contact with co-workers, supervisors and the public; and adapt to changes as needed within the parameters identified by Dr. Cutler (with the exception of the two-hour restriction, discussed above) [TR 203, 237, 1530].

### III. CONCLUSION

Although the ALJ did not err in the other respects alleged by Plaintiff, the Court finds that the ALJ's determination that Plaintiff is able to perform jobs that exist in significant numbers in the national economy is not supported by substantial evidence, as the hypothetical question posed to the VE failed to include the mental limitations identified by Dr. Cutler, and later affirmed by Dr. Sillers. Accordingly, for the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the Plaintiff's motion for summary judgment [DE #13] is **GRANTED IN PART** to the extent that the ALJ's decision will be remanded for further consideration of Plaintiff's ability to perform jobs that exist in significant numbers in the national economy and **DENIED** in all other respects, particularly to the extent that Plaintiff seeks an award of benefits;

(2) the Commissioner's motion for summary judgment [DE #14] is **DENIED** to the extent that the ALJ's decision will be remanded for further consideration of Plaintiff's ability to perform jobs that exist in significant numbers in the national economy and **GRANTED** in all other respects;

(3) the ALJ's decision is **REVERSED** and this matter **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration Plaintiff's ability to perform jobs that exist in significant numbers in the national economy in accordance with this Opinion & Order;

(4) a judgment will be entered contemporaneously with this Opinion & Order.

This April 11, 2013.



Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**